The opinion of the Court was delivered at the same term to the following effect by
Parker, J.
[After statirig the declaration and pleadings, and the-evidence and judge’s direction at the trial.] A verdict having *316 been found for the plaintiff, agreeably to the direction, a new trial has been moved for, on the ground that the said direction was against law.
But we are all of opinion that the direction given at the trial was right, and that the testimony given to the jury, which the judge directed them not to regard, might lawfully have been rejected ; the only tendency of it being to control the operation of the order of the Sessions, which had become a matter of record, as well as of the lease of * Daggett, which alone made any part of his house apartments belonging to the prison.
The statute of 1784, c. 41, entitled “ an act for providing and regulating of prisons,” in the ninth section provides that persons imprisoned for debt “ shall be allowed to have a chamber and lodging in any of the houses or apartments belonging to the prison, and liberty of the yard within the same in the day time, but not to pass without the limits of the prison, upon reasonable payment to be made for chamber room, to be set and established by the Court of Sessions.”
This statute undoubtedly contemplates houses belonging to the prison, other than and distinct from the prison or jail itself; probably upon the expectation of the legislature, that there would be a dwelling-house for the jailer or prison-keeper, within the precincts of the prison, provided at the expense of the county. In counties where there exists such a house belonging to the county, within the duly-assigned limits of the jail-yard, the Court of Sessions may appropriate any part of such house for the receiving and lodging of prisoners for debt, who have given bond for the liberty of the yard; and if no such appropriation be made by the Sessions, the jailer may lodge such prisoners in any apartments of such house belonging to the prison.
But the house occupied by the jailer may he no part of the prison, nor a house or apartment belonging to the prison, even although it may be within the limits of the jail-yard, unless there be some act of the justices of the Sessions making it such. Now, in the case before us, the house which the jailer occupied belonged to him, and not to the county, and made no part of the prison; until by his lease to the county, and their acceptance of said lease, the parts of his house described therein were adopted as apartments belonging to the prison. The residue of the house, not within the lease, remained the property, and in the possession of Daggett, the owner, and was not under * the control of'the Court of Sessions, or of the sheriff of the county, and so could not be considered, in any view, as belonging to the prison, more *317 than any other house belonging to any other person, which might happen to be within the limits of the jail-yard.
The evidence, which the jury were instructed to reject from their consideration, tended to prove that notwithstanding the order of the Sessions, and the lease, there were other apartments in Daggett’s house belonging to the prison. But this could not be proved by parole; the only proper evidence was the order of the Court and the lease, which were before the jury.
But it is said, that although no part of Daggett’s house but whai is contained within the lease, should be considered as belonging to the prison, yet as, by the understanding of the justices, and the consent of the jailer, the westerly chamber had always been used by such prisoners as the jailer saw fit to indulge, for their accommodation in the evening until bed time, there being no fireplace in the easterly chambers, that prisoners might lawfully be there under such circumstances. It is, however, very clear that no understanding of the justices, or permission of the jailer, can alter, by enlarging or contracting the accommodations, which have been legally established for debtors; and it would be mischievous to give to jailers the power of discriminating between prisoners in the manner contended fpr. Every prisoner, who has given bond, is entitled to a chamber and lodging in the apartments of the prison, if he can pay for them; and no prisoner is entitled to any other indulgence, save the liberty of the yard in the day time.
But even by the testimony given, it appears that the justices and jailer did not contemplate a right in the debtor to lodge in the westerly chamber; but only to remain there until he should retire to bed, when he was to repair to one of the easterly chambers. Now, there is no pretence of a power in the justices to authorize accommodations for one part of the night, which cannot be used during * the whole night. In the day time only the bonded debtor has the privilege of the yard ; in the night time he may have any apartment belonging to the prison. Now the night time is fixed by law, and there is no apportionment of it, so that greater privileges may be enjoyed in one part of it than in the other.
It has, however, been urged with ingenuity, that the true construction of the order itself will bring the westerly chambers of Daggett’s house, as well as the easterly, within the assignment; for it is said that the easterly chambers, together with the joint use of the garret and kitchen, and certain out-door privileges, as also the land west of the same to the highway, being assigned, and the westerly chambers being over land west of the premises, these westerly chambers come within the assignment.
*318 But this construction would be manifestly contrary to the intention of the jailer, who leased only the easterly part of his house, and contrary to the plain intent of the justices of the Court, who describe only the east chambers as within their assignment. Besides which, the land intended to be passed by the lease was, according to the most grammatical construction of the sentence, land lying westwardly of the house, and not land lying westwardly of the easterly part of it; which is the construction contended for in this argument. A new trial is not granted.
There are two other pleas in bar, to each of which there .is ageneral demurrer and joinder. The substance of one of them is, that the bond was not taken in double the amount of the debt and costs in the execution; and of the other, that the sureties in the bond did not reside or dwell in the county of Norfolk.
It was contended by the defendants, that for these causes the bond is void.
With respect to the first, it has recently been determined by this Court in two cases, (4) that a bond given by a prisoner for debt, in which the penalty is less or more than double the amount of the debt and costs in the execution, * although not a bond within the statute, so as to entitle the obligee, upon breach of the condition, to the whole penalty, Is yet good at common law, and upon forfeiture judgment may be entered for the debt and costs only.
As to the other supposed defect in the bond, viz., that the sureties were not persons residing within the county where the bond was taken ; this being' contrary to a plain requisition of the ninth section of the statute, perhaps would deprive the obligee of the right to insist on the penalty. We do not, however, decide this point, the bond being for the other cause determined not to be within the statute. But there is no reason why the bond should not be good at common law, it having been voluntarily entered into for the benefit of the principal, to procure a relaxation of a lawful imprisonment, to which he could not have been entitled, without giving the bond.
Whether the sheriff could not be charged for an escape, he having permitted the party to pass out of close imprisonment, upon a bond not taken according to the statute, needs not now to be decided.
The bond is now accepted by the obligee, and he is entitled to a judgment of forfeiture, if the condition is broken. The second and third pleas are adjudged bad. Judgment must be given for the *319 plaintiff, that the bond is forfeited; and the defendants may be heard in chancery.
The action stood continued to this term for a hearing in equity. From t'ne examination of Daggett, and several of the magistrates of the county of Norfolk, it appeared that the prisoner Lowder, after the bond was executed, inquired, with much anxiety, as to the limits in the house, and was informed that the east chambers and the garret were appropriated as sleeping-rooms for debtors, but that the other parts of the house being within the limits, he might be in them in the day time. He accordingly slept constantly in the east chambers, but spent the days and evenings in the west chamber, where he was seen by the * sheriff of the county, in an evening, and was directed by him that he must not sleep in that room, but might tarry therein at other times.
Jackson argued that the Court, having authority in suits on bonds with penalties to give judgment for so much only as shall appear to be due in equity and good conscience, will here perceive that the escape was perfectly involuntary on the part of Lowder. Indeed, he exercised the most honorable and scrupulous diligence to ascertain his limits, that he might in no event invole his sureties. He was not chargeable even with carelessness. He was misled by the sheriff, the magistrates, and the jailer, on all whom it was most natural for him to place reliance. Such being the fact, it would savor of extreme severity to mulct his sureties in the amount of the whole debt, which exceeds six thousand dollars. The case of Dole vs. Moulton (5) was of an involuntary and inadvertent escape, where the facts and the statute of New York were very similar to those in the present case.
Prescott. That case has been since overruled in New York. But the cases of Clap, Admx., vs. Cofran, and Freeman vs. Davis & Al., in our own Court, have established the principle, that the judgment in equity shall be for the amount of the debt, with interest and costs.
Jackson, in reply. The point was not discussed in those cases. There the amount was small, and probably thought by the parties not worth making a question of. But here the amount is of a magnitude which calls for deliberation, before a party, perfectly free from a charge, amounting even to an indiscretion, shall be held liable for the whole sum, while the legitimate powers of the Court enable them to apply equitable principles to their decision.
*320 By the Court, (absent Sedgwick, J.) We consider this point as put at rest by the cases referred to. Nor is it unreasonable.
The debtor’s body is considered as a pledge for his debt.
It is not for him to say the pledge was inadequate. *If the sheriff is liable for the escape, it is clear that he must be answerable in the sum for which the debtor was held a prisoner Judgment must be entered for the debt and costs, with interest to this time.

 7 Mass. Rep. 98, Clap, Admx. vs. Cofran. — Ibid. 200, Freeman vs. Davis & Al

 2 Johns. Cases, 205.